## LEWIS E. MILTON'S CASE.

### Sagadahoc.    Opinion April 13, 1923.

*Both the date of beginning and end of the period of compensation must be definitely fixed by agreement or decree, under the Workmen's Compensation Act, to make effective the limitation, in section thirty-six, for filing petitions for review. When an agreement for compensation has been filed and approved within two years after the injury, the case is before the commission and there is no time limit for later filing a petition for determination of degree of present disability. The lack of opportunity to work included in the phrase "incapacity for work" is such as is due neither to claimant's own fault subsequent to the accident, nor to illness not connected with the accident, nor to general business depression.*

Section thirty-six of The Workmen's Compensation Act, relating to review of decrees and agreements for compensation does not apply to petitions based upon agreements in which the period of compensation is not determined.

In fixing the time within which petitions for review shall be filed, section thirty-six contemplates that the period of compensation shall be definitely fixed by the agreement or by decree.  Both the date of the beginning and the date of the end of the period of compensation must be definitely fixed.

Where an agreement for compensation does not fix the duration of the period of compensation and the Commissioner in approving the agreement adds to his approval the words "subject to review as provided by the Workmen's Compensation Act," the rights of the parties are not changed thereby.

When such an agreement for compensation has been filed and approved within two years after the occurrence of the injury, the limitation fixed in section thirty-nine is met; the case is before the commission and there is no time limit for later filing a petition for determination of the degree of present disability.

The matter being before the commission, a motion or petition may be filed at any time by any party in interest, upon failure of employer and employee to reach an agreement as to the degree of present disability and the compensation to be awarded therefor.

The petition in the instant case praying for a reduction of compensation is, therefore, properly before the court, although signed by the insurance carrier, who was not a party to the agreement for compensation.

The element of remunerative employment reasonably available to the claimant in his present condition is properly to be considered in determining the degree of present incapacity to labor.

The lack of opportunity to work included in the phrase "incapacity for work" is such as is due neither to claimant's own fault subsequent to the accident, nor to illness not connected with the accident, nor to general business depression.

If the lack of opportunity to work is due to general disinclination on the part of persons requiring help, to employ maimed or crippled men when sound men are available, after diligent effort of claimant to obtain employment, it is an element of claimant's loss of capacity to earn; but if the lack of opportunity to work is due to the fault of the claimant or to general business depression, it is not such an element.

The decision of the Chairman states that no evidence was offered of remunerative employment reasonably available to the claimant, which he can perform in his present crippled condition. The qualifications that such lack of remunerative employment was caused neither by unwillingness to labor on the part of the claimant, nor by general business depression, were apparently overlooked or disregarded; the case lacks such finding.

Compensation under the Maine Statute is awarded for loss of capacity to earn; not for incapacity to do the same kind of work as before the injury, but for incapacity to earn in the claimant's crippled physical condition, and this incapacity includes lack of opportunity to work not due to his own fault, or to general business depression.

On appeal. This is an appeal from a decree entered in accordance with the findings of the Chairman of the Industrial Accident Commission in ordering the respondent to continue payments of $15.00 per week to claimant under the Workmen's Compensation Act. The claimant was injured on October 16, 1920, while in the employ of Watson, Frye Company, Ltd. of Bath, resulting in a fracture of the right forearm above the wrist. By agreement duly approved, he had been paid compensation for total disability. On May 5, 1922, the employer and insurance company, filed a petition for a review, alleging that the incapacity had diminished, and asked that the compensation be diminished, which petition was denied and an appeal taken. Appeal sustained. Case recommitted to the Industrial Accident Commission to determine in accordance therewith, the compensation to which claimant is entitled.

The case is fully stated in the opinion.

*Arthur J. Dunton*, for claimant.

*Robert Payson*, for respondents.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

MORRILL, J.  This appeal under the Workmen's Compensation Act raises an important question of procedure which has not heretofore been presented for consideration.

On October 16, 1920, the claimant suffered a fracture of the right arm which resulted in the impairment of the usefulness of the arm and right hand; on October 22, 1920, the employer and employee made an agreement for compensation, approved by the Commissioner on October 26, 1920, by which the claimant was to receive fifteen dollars per week "during disability beginning October 26, 1920," being the amount of compensation for total disability under Section 14, as the statute then read; the insurer was not a party to the agreement.  On May 3, 1922, the insurer filed a petition alleging that the injury for which the employee was compensated had diminished since the agreement was made, and praying "that compensation of the agreement as above set forth may be diminished, (and) for such further relief as may be properly granted the petitioner."  The Chairman heard the case, denied the petition, and ordered compensation continued according to the terms of the agreement; from a decree entered in accordance with such decision this appeal is taken.

Throughout the proceedings the petition has been treated by parties and Chairman as a petition for review under Section 36, with the burden of proof on the insurer to show that claimant's incapacity had diminished.

If the petition is properly a petition for review under Section 36, the question is presented whether the petitioner has standing in court, not being a party to the compensation agreement.  But we do not find it necessary to decide that question.

This petition cannot be properly regarded as a petition for review under Section 36.  True, the commissioner approved the agreement for compensation with the qualification, "subject to review as provided by the Workmen's Compensation Act."  This qualification, however, cannot change the rights of the parties; if the agreement is reviewable, it is because the law makes it so; if not made reviewable by the act, the endorsement of the Commissioner cannot make it so.

We think that the petition in this case must be considered as a petition for determination of extent of present incapacity, rather

than a petition for review within the meaning of Section 36, and that that section does not apply to petitions based upon decrees and agreements for compensation, like the agreement before us, where the period of compensation is not determined.

In fixing a time within which petitions for review shall be filed, Section 36 contemplates two indispensable prerequisites, viz.: that the agreement for compensation shall be approved, and that the period of compensation shall be definitely fixed by the agreement or by decree. Both the date of the beginning, and the date of the end of the period of compensation must be definitely fixed. The language of the section fairly so implies. In the present case the parties apparently could not know the duration of the disability. The agreement reads:

"Period of disability: From October 16, 1920 to"—The agreement was for compensation "at the rate of 15 dollars per week during disability beginning, Oct. 26, 1920," which, as we have seen was the rate for total disability.

The parties agreed as far as it was possible for them to do so; they could not know the duration of total or partial incapacity; they necessarily left the period of compensation open, limited only by the duration of disability and by the provisions of Sections 14 and 15. The total disability might continue for three years or more after the approval of the agreement. If the employer's remedy in such a case is by petition for review under Section 36, his petition may be barred by the limitation of that section before the period of disability has expired and before its duration can be known; such cannot be the intent of the law.

The parties commendably agreed as far as it was possible for them to do so, and filed their agreement for approval. Now they disagree as to the degree of present disability, and the insurer files a petition asking in effect to have that determined. The agreement having been filed, and in this case approved, within two years after the occurrence of the injury the limitation fixed in Section 39 is met; the case is before the commission, and there is no time limit for later filing a petition for determination of the degree of present disability, whether filed by claimant or employer. *Morin's Case*, 122 Maine, 338.

The result is, the matter being before the commission and under its control, a motion or petition may be filed at any time by any party

in interest, upon a failure of employer and employee to reach an agreement as to the degree of present disability, and the compensation to be awarded therefor.

It must be understood that we are not in any way discountenancing the use of agreements for compensation for undetermined periods. They avoid delay and operate beneficially for the injured employee, and their use should be encouraged. We are only concerned with the proper precedure to preserve the rights of the parties when the case has reached a stage where the parties can no longer agree.

The case must, however, be recommitted to the Industrial Accident Commission. The Chairman finds that "Mr. Milton is still entitled to compensation for total incapacity to work." He adds:

"As a result of the accident to Mr. Milton, Oct. 16, 1920, he has suffered an impairment to his right forearm and hand which prevents him from resuming his former occupation and seriously handicaps him in the performance of any other remunerative employment except such as can be performed by a man with one hand.

"No evidence was offered to show that there was reasonably available to Mr. Milton any remunerative employment which he can perform in his injured condition. Because of the crippled condition of Mr. Milton's right hand as a result of the accident, and because there was no evidence offered showing that there was reasonably available to Mr. Milton either with Watson, Frye Company, Ltd., his employer when injured, or with anyone else, remunerative employment which Mr. Milton can perform in his present crippled condition and because as a result of the accident to him, October 16, 1920, Mr. Milton is totally incapacitated to perform the kind of work being done by him when injured, the petition to order compensation diminished is denied."

The appellant argues that the Chairman has here erred as a matter of law in that his ruling is equivalent to holding that the burden is upon the employer to provide the claimant with remunerative employment. The element of remunerative employment, reasonably available to the claimant in his present condition, is properly to be considered. In *Ray's Case*, 122 Maine, 108, it is said, "The phrase 'incapacity for work,' appears in practically all Workmen's Compensation Statutes and has come to have a well settled meaning. It includes according to nearly all authorities not merely want of physical ability to work but lack of opportunity to work," due neither

to claimant's own fault subsequent to the accident, nor to illness not connected with the accident, nor to general business depression.

This statement is not equivalent to holding that in a case like the present, the employer has the burden of providing the claimant with remunerative employment; but it recognizes as proper for consideration evidence or lack of evidence of a condition by which the employee's incapacity, "his loss of capacity to earn" (*Thibeault's Case*, 119 Maine, 336) may be affected. In considering the element of lack of remunerative employment, the qualification that such lack of opportunity to work is not due to general business depression, is important; if the qualification is disregarded, the employer will be held to guarantee employment regardless of the condition of industry in a given locality.

We are not disposed to scan too closely the language of the Chairman in stating the reasons for his decision, and ought not to do so, only to attach the ordinary meaning to his words; upon examining this record, however, we are led to think that this qualification may not have been regarded by the Chairman in making his decision. He states that no evidence was offered of remunerative employment, reasonably available to the claimant, which he can perform in his present crippled condition. The claimant was called as a witness and examined by counsel for the insurer. If the lack of opportunity to work is due to general disinclination on the part of persons requiring help, to employ maimed or crippled men when sound men are available, after diligent effort by claimant to obtain employment, it is an element of claimant's loss of capacity to earn; but if the lack of opportunity to work is due to the fault of the claimant or to general business depression, it is not such an element, *Ray's Case*, supra. That is a question of fact to be decided by the Chairman, not by the court on appeal.

The evidence was such as to require a finding that neither unwillingness to labor on the part of the claimant, nor general business depression, caused the lack of remunerative employment for the claimant in his present condition, before it could be said that no evidence was presented of reasonably available remunerative employment. The case lacks such finding; those qualifications were apparently overlooked or disregarded, and the statements of the Chairman are susceptible of the construction placed upon them by the counsel for appellants.

The Chairman also includes, among his reasons for denying the petition, the following: "Because as a result of the accident to him, October 16, 1920, Mr. Milton is totally incapacitated to perform the kind of work being done by him when injured."

The reason here stated is based upon a wrong standard for determining total or partial incapacity to work. Compensation under the Maine Statute is awarded for "loss of capacity to earn," *Thibeault's Case*, supra; not for incapacity to do the same kind of work as before the injury, but for incapacity to earn in his crippled physical condition; (*Connelly's Case*, 122 Maine, 289), and this incapacity includes, as before stated, lack of opportunity to work not due to his own fault, or to general business depression.

It is impossible to tell how far the reason last above quoted, based upon an erroneous conception of the law, entered into and influenced the Chairman's decision.

> *Appeal sustained.*
> *Case recommitted to The Industrial Accident Commission to determine, in accordance herewith, the compensation to which claimant is entitled.*