Reginald MERRIAM

v.

JAMES RIVER CORP., and Aetna
Casualty & Surety Co.

Supreme Judicial Court of Maine.

Argued Jan. 12, 1981.

Decided Feb. 23, 1981.

Rowe & Sanders, David M. Sanders (orally), Livermore Falls, for plaintiff.

Robinson & Kriger, James S. Kriger, Roland Beaudoin (orally), Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

GODFREY, Justice.

The employee, Reginald Merriam, appeals from a pro forma decree of the Superior Court affirming a Workers' Compensation Commission decree sustaining the employer's petition for review of incapacity. On appeal Merriam contends that there was insufficient evidence supporting the Commissioner's findings that he had no loss of earning capacity and that he had resumed employment. The employee further argues that the Commissioner required Merriam to make a good-faith search for work in order to be entitled to compensation for partial incapacity, and that this requirement constituted an error of law. We affirm the pro forma judgment.

On October 31, 1978, Merriam suffered a strained ligament in the middle finger of his right hand while operating a valve for his employer, the James River Corporation. The employee and employer entered into an agreement whereby Merriam would be compensated for total incapacity beginning on

November 4, 1978. This agreement was executed on December 1, 1978, and was approved by the Workers' Compensation Commission on December 22, 1978.

On April 17, 1979, the employer filed a petition for review of Merriam's incapacity, asserting that Merriam's incapacity for work had diminished or ended since the date of the compensation agreement. The employer further filed a certificate stating that Merriam had resumed work.[1] Hearings on the petition were held on July 17 and October 10, 1979. At the first hearing Dr. John Greene, an examining orthopedic surgeon, testified that he had first examined Merriam two weeks before the compensation agreement was executed. At that time the employee's injured finger was swollen and somewhat tender, precluding him from performing other than sedentary work. Dr. Greene saw Merriam again on March 20, 1979, and observed that the swelling in the injured finger had diminished, that Merriam had full extension and nearly complete flexion of the afflicted joint, and that he had no weakness in his grip or pinch. On the basis of that examination Dr. Greene concluded that there was little evidence that Merriam had any disability, that whatever incapacity remained was minimal, and that the employee could now return to work. In short, Dr. Greene testified that Merriam's disability for work had virtually ended.

At the same hearing, Merriam testified that since October of 1978 he and his wife had maintained an Amway distributorship. To meet the demands of the distributorship, Merriam made an average of fifteen stops per day and traveled an average of 1,900 miles per month. Merriam had begun his work for Amway as a part-time job a month before his injury at James River Corporation, and he expanded the distributorship after his injury. At the time of the hearings, Merriam estimated that his work for Amway could be condensed to a three-day week. The business was unprofitable at the time of the hearing, but Merriam was aware that businesses normally require several years to become profitable and hoped that his distributorship would show a profit even sooner. He had not looked for other work.

The Commissioner issued his decree sustaining the employer's petition for review on March 25, 1980. Although the decree is not a model of organization, it expresses the following determinations: First, the Commissioner found that Merriam's total incapacity for work had "diminished or ended" since the time the compensation agreement was executed. Next the Commissioner found that the employee at least had a capacity for "light work." Apparently intending to address the possibility that Merriam might still be considered totally incapacitated under *Ray's Case*, 122 Me. 108, 119 A. 191 (1922), the Commissioner concluded that even if Merriam were partially disabled, he had not made a good-faith effort to find remunerative employment within his capacity. Citing Dr. Greene's testimony that Merriam's disability was very slight, the Commissioner held that the employee "had recovered to the point of no recovery [sic] as of March 23, 1979." Finally, the Commissioner found that Merriam had removed himself from the labor market by pursuing his Amway business and "was not, in fact, disabled while he was pursuing a full-time career as an Amway distributor." The Commissioner ordered that all compensation payments to Merriam be terminated.

■ Because the employee made no request for specific findings of fact and conclusions of law pursuant to 39 M.R.S.A. § 99 (1978), the Law Court must assume that the Commissioner made all the factual findings necessary for his ultimate decision, and it will examine the record for competent evidence supporting those assumed findings. *See, e. g., Ronco v. Diamond Machine Co., Inc.,* Me., 424 A.2d 1093 (1981).

1. *See* 39 M.R.S.A. § 100 (1978).

In order to terminate compensation payments completely, the Commissioner had to find that Merriam's incapacity for remunerative employment had ended completely. On this point the decree states that Merriam "had recovered to the point of no recovery." Obviously, such a facially nonsensical assertion could not have been made intentionally by the Commissioner and must be the result of a drafting error. From the context of the decree it is certain that the Commissioner meant to find that Merriam had recovered to the point of no physical disability, that is, to the point where he was entitled to "recover" no workers' compensation benefits. The testimony of Dr. Greene, cited by the Commissioner in support of that finding, supports a conclusion of no disability and cannot be reconciled with a determination that Merriam had shown no recovery. The related finding that Merriam was not disabled while he pursued his Amway distributorship further supports the conclusion that the Commissioner intended to hold that Merriam's incapacity for remunerative employment had ceased.

■ The testimony of Dr. Greene provides competent evidence for the conclusion that Merriam's physical disability had ended completely. Likewise, there was competent evidence supporting the Commissioner's determination that Merriam was not disabled while he was an Amway distributor and had removed himself from the labor market in order to pursue a full-time job. The employee devoted a substantial portion of each day to the distributorship and traveled considerable distances to meet potential customers. Merriam's driving and sales activities were not affected by his injured finger. Never did the employee seek any other type of work. The Commissioner could have reasonably found that Merriam's relatively small number of work hours and low profits were attributable to the risks of entrepreneurship rather than to any physical disability.

■ Finally, the employee argues that the Commissioner erred as a matter of law in requiring him to make a good-faith search for work in order to receive compensation for partial work incapacity. If the Commissioner had so ruled, Merriam's contention would have merit; whether an employee has made a good-faith work search is relevant only to whether an employee with partial physical disability nevertheless totally lacks earning capacity. *See, e. g., Warren v. Vinalhaven Light & Power Co.,* 424 A.2d 711 (1981). Failure to seek work has no bearing on a partially disabled employee's eligibility for compensation for partial work incapacity.

In the present case, however, the Commissioner found that Merriam had no physical disability at all. The Commissioner did say that "even if he had been partially disabled, the employee has not made a good faith effort to obtain work within the tolerance of his physical condition." However, that statement does not imply that, in fact, Merriam had a partial physical disability stemming from his injury. Rather, the Commissioner, in the course of discussing every theory on which Merriam could be eligible for compensation, was assuming *arguendo* that the employee was partially disabled for the purpose of showing that, even on that assumption, he could not be considered totally incapacitated under *Ray's Case, supra.* Leaving the issue of total incapacity, the Commissioner found that Merriam was not entitled to compensation even for partial incapacity because he was not physically disabled from working. Although the Commissioner's discussion of total incapacity was unnecessary to his decision, it was not erroneous.

The entry is:

Appeal denied.

Judgment affirmed.

It is further ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

All concurring.